## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

STEVE D.,

                    Plaintiff,

vs.                                                           Case No. 18-CV-330-JED-FHM

ANDREW M. SAUL,[1]
Commissioner of Social Security
Administration,

                  Defendant.

### REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2]  The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

### Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less

---

[1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Andrew M. Saul, Commissioner of Social Security Administration, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  Plaintiff's November 5, 2014, application for disability benefits was denied initially and on reconsideration.  A hearing before Administrative Law Judge ("ALJ") James Stewart was held January 12, 2017.  By decision dated March 18, 2017, the ALJ entered the findings that are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on April 24, 2018.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 43 years old on the alleged date of onset of disability and 45 on the date of the ALJ's denial decision. He has a high school education and formerly worked as a store laborer, construction worker, truss assembler, assistant construction superintendent, pallet builder, and material handler. He claims to have been unable to work since July 26, 2017, as a result of leg pain related to traumatic fracture of the right femur, greater trochanteric bursitis, piriformis syndrome, diabetes mellitus with bilateral foot neuropathy symptoms, affective mood disorder, anxiety, high blood pressure, deep vein thrombosis, gastroesophageal reflux, osteoarthritis, and cannabis use.

## The ALJ's Decision

The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform sedentary work with standing and walking limited to no more than half an hour per day, intermittently, not continuously. He must be allowed to alternate between sitting and standing while staying on task. The standing and sitting alteration period should allow

standing for up to five minutes after sitting for thirty minutes.  No climbing can be performed, but stooping, crouching, crawling, kneeling, balancing, and climbing of ramps or stairs may be done occasionally.  Plaintiff is capable of performing only unskilled work consisting of simple and routine tasks with routine supervision, he can relate to co-workers and supervisors on a superficial and work-related basis, with some repetition and reinforcement of instructions from supervisors on average of no more than once per month. He can have no contact with the general public.  [R. 24].

Although Plaintiff is unable to perform his past relevant work, based on the testimony of a vocational expert, the ALJ determined that the job of document preparer, DOT #249.587-018 is a representative occupation that Plaintiff could perform with these limitations.  The ALJ found that the number of jobs, 57,000 nationally, is a significant number of jobs, and therefore Plaintiff was not disabled.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that the ALJ's decision is based on legal error and is not supported by substantial evidence in that the ALJ failed to consider Plaintiff's obesity, the ALJ erred in evaluating Plaintiff's subjective complaints, the finding that Plaintiff could perform other work in the economy is based on a flawed RFC finding, the ALJ erred in evaluating Plaintiff's mental impairments, and the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).

3

## Analysis

### Consideration of Obesity

Plaintiff argues that remand is required because the ALJ failed to properly consider his obesity.  The ALJ did not discuss obesity.  However, the ALJ extensively and accurately outlined Plaintiff's medical record.  [R. 26-40].  The RFC for a reduced range of sedentary work takes into account limitations supported by substantial evidence.  Plaintiff has not identified any limitations not already included in the RFC that are attributable to obesity. Specifically, Plaintiff has not pointed to any obesity-related or exacerbated impairments such as respiratory, cardiovascular, or circulatory disorders that result in limitations greater than the RFC finding.  It is Plaintiff's duty on appeal to support his arguments with references to the record and to tie relevant facts to his legal contentions.  The court will not "sift through" the record to find support for the claimant's arguments. *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir.1992), *United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error).

Plaintiff essentially argues that a technical error may have been committed but does not demonstrate that he was prejudiced by the alleged error.  No remand is required under these circumstances.  The Tenth Circuit has counseled that the court should exercise common sense and not insist on technical perfection. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  Further, no principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to

4

believe that the remand might lead to a different result.  *See Moua v. Colvin,* 541 Fed.

Appx. 794, 798 (10th Cir. 2013).

Evaluation of Subjective Complaints

The analysis to be followed in evaluating a claimant's subjective complaints or

symptoms is set out in 20 C.F.R. §§ 404.1529, 416.929.  The court will not upset such

findings if they are supported by substantial evidence and if they are closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).  The ALJ is not required to make

a formalistic factor-by-factor recitation of the evidence as long as the specific evidence

relied on in the evaluation is set forth.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th

Cir. 2012).   Plaintiff argues that the ALJ failed to properly address his subjective

complaints.  The undersigned finds that the ALJ adequately evaluated Plaintiff's subjective

complaints and that the ALJ's conclusions are supported by substantial evidence.

The ALJ noted Plaintiff's hearing testimony that he could only walk 15 yards with a

cane, that he could sit for 15-20 minutes, and then would have to move around for 5-10

minutes, that he is typically in a recliner 4-5 hours per day, lays on the couch 1-2 hours per

day, that Plaintiff naps 2-3 hours per day, that he cannot focus enough to watch a movie,

and medication makes him drowsy.  [R. 25-26].  The ALJ accurately summarized the

medical records and found that Plaintiff's testimony as to his severely limited daily activities

is not supported by the evidence of record.  [R. 37].  In this regard, the ALJ noted entries

in the medical records that in June 2016 Plaintiff had been weed eating and in August 2016

he told his doctor he had been "mowing yards" for exercise.  [R. 37, 1035, 1061].  The ALJ

noted the medical records reflect Plaintiff's medication regimen has been relatively effective

5

when taken as prescribed, with periodic modifications.  [R. 38].  The ALJ also recounted the many times in the medical records when Plaintiff reported few symptoms or reported improvement in his symptoms.  [R. 38].  And, the ALJ contrasted the medical findings with Plaintiff's reported limitation in his ability to sit.  [R. 40].

In his briefing, Plaintiff points out evidence which he asserts is contrary to the ALJ's conclusion.  However, the existence of evidence in the record contrary to the ALJ's findings does not deprive the findings of substantial support in the record.  The Tenth Circuit has stated that the possibility of drawing two inconsistent conclusions from evidence in a case does not prevent an administrative agency's findings from being supported by substantial evidence.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## RFC Finding

Plaintiff broadly asserts that the RFC is not supported by substantial evidence because the RFC does not include the combined effects of all of his impairments.  [Dkt.13, p. 10].  Aside from re-iterating the previously discussed obesity, Plaintiff does not point to any functional limitation the ALJ failed to consider.

## Evaluation of Mental Impairments

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't*

6

*of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same).  The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage oneself.  These criteria represent the areas of mental functioning a person uses in a work setting.  *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C).  The findings related to the "paragraph B" criteria are not RFC findings, but rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  *See Chrismon v. Colvin*, 531 Fed.Appx. 893, 897-898 (10th Cir. 23013)(discussing the difference between PRT findings and RFC findings).

Plaintiff argues that the ALJ's PRT finding that he had moderate limitations in the areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace are inconsistent with the ALJ's finding that he can perform substantial gainful work.  As previously stated, the PRT findings rate the severity of mental impairments and are not RFC findings.  The PRT findings are not expressed in work-related limitations and consequently the language contained in the PRT findings is not appropriate for inclusion in hypothetical questioning of a vocational expert or in the RFC.  The undersigned finds that the ALJ appropriately included in the RFC the work-related limitations that result from Plaintiff's mental limitations by limiting Plaintiff to the performance of "only unskilled work consisting of simple and routine tasks with routine supervision that requires only that he be able to understand, remember and carry out simple instructions . . [that he] relate to supervisors and co-workers on a superficial and work-related basis"  [R. 24].  In addition, the ALJ included the work-related limitation that

7

some repetition and reinforcement of instructions may occur and that there be no contact with the public. *Id*.  The ALJ's RFC finding concerning Plaintiff's mental abilities is consistent with the mental RFC findings made by the state agency psychologists, Mary Rolison, PhD and Phillip Massad, PhD, who reviewed Plaintiff's medical records and opined on March 24, 2015 and June 17, 2015, respectively, as to Plaintiff's work-related limitations, as follows:

> Claimant can perform simple tasks with routine supervision.
> * * * *
> Claimant can relate to supervisors and coworkers on a superficial work basis.  Claimant cannot relate to the general public.
> * * * *
> Claimant can adjust to a work situation.

[R. 123-124, 137-138].  The undersigned finds that the ALJ's findings as to Plaintiff's mental RFC are supported by substantial evidence.

### Consideration of Dr. Boyd's Records

On July 27, 2015, B.J. Boyd, PhD. performed neuropsych testing on Plaintiff. Dr. Boyd reported Plaintiff had extremely low scores in immediate memory, attention, and delayed memory.  [R. 854].  Dr. Boyd stated the scores indicated a potential problem with working memory or processing speed as opposed to aphasia.  Plaintiff was advised to consult his primary care provider for a review of potential side effects of medications.  Dr. Boyd noted that the medication Quetiapine can be quite sedating.  [R. 854].  The ALJ accurately recounted Dr. Boyd's findings at two places in the decision.  [R. 22-23, 32-33]. Plaintiff asserts that the ALJ erred because he did not expressly accept or reject Dr. Boyd's opinion, or explain how he factored the findings into the RFC.

The undersigned finds no error in the ALJ's treatment of Dr. Boyd's report.  Dr. Boyd reported test results and observations but did not opine as to Plaintiff's functional limitations.  The ALJ demonstrated he considered those findings and included limitations in the RFC that specifically relate to Plaintiff's mental impairments.

<u>Vocational Expert Testimony and the DOT</u>

Plaintiff argues that the ALJ's step five finding that work exists in the economy that Plaintiff can perform with his RFC is flawed because the ALJ failed to resolve a conflict between the vocational testimony and the Dictionary of Occupational Titles (DOT).  The job identified by the vocational expert is that of document preparer, DOT # 249.587-018, 1991 WL 672349.  According to Plaintiff, the reasoning development and language development levels assigned to the job by the DOT demonstrate that the vocational expert's testimony conflicts with the DOT and that unexplained conflict requires remand.  However, the DOT reasoning and language development levels address the worker's educational level and are not necessarily related to whether the job entails simple and routine tasks and simple instructions required by the ALJ's RFC.

The DOT assigns a reasoning development level, a mathematical development level, and a language development level to every job as part of what the DOT calls a scale of General Educational Development (GED).[3]  The DOT explains that GED "embraces

---

[3] The DOT assigned the document preparer job a reasoning development level 3 and a language development level 2.  There are 6 reasoning development and language development levels, with one being the lowest level.  A reasoning development level of 3 entails education that encompasses:

"Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."

*DICOT APPENDIX,* Appendix C–Components of the Definition Trailer, III. General Educational Development (GED), 1991 WL 688702.  A language development level 2 entails education that encompasses:

(continued...)

those <u>aspects of education</u> (formal and informal) which are required of the worker for satisfactory job performance."   *DICOT APPENDIX,* Appendix C–Components of the Definition Trailer, III. General Educational Development (GED), 1991 WL 688702. (emphasis supplied).  The DOT further explains, "[t]his is <u>education</u> of a general nature which <u>does not</u> have a recognized, fairly specific occupational objective."  *Id.*  (emphasis supplied).  Plaintiff's argument involves the reasoning development level and the language development level.

The DOT states that the GED, of which reasoning development and language development levels are components, addresses educational background.  Nothing in the record or Plaintiff's arguments suggest that Plaintiff's education is insufficient for the job identified by the vocational expert.  Plaintiff completed high school.  He told Dr. Boyd he made Bs and Cs in school.  [R. 32, 853].  The ALJ limited Plaintiff to simple and routine work, not as a result of a lack of educational development, but to accommodate the effects of Plaintiff's mental impairments.  [R. 24].  The undersigned finds that Plaintiff's reference to the reasoning development and language development levels has not identified a conflict between the DOT and the vocational expert's testimony.

The undersigned finds that Plaintiff's arguments present no basis for remand of this case.  Social Security Ruling (SSR) 00-04P addresses reliance on vocational expert testimony and provides:

---

[3]  (...continued)
"Reading:  Passive vocabulary of 5,000-6,000 words.  Read at rate of 190-215 words per minute.  Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation.  Read instructions for assembling model cars and airplanes. Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
*Id.*

> When there is an <u>apparent</u> conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-04P, 2000 WL 1898704 (emphasis supplied).  In this case the ALJ did all that was required of him.  The ALJ inquired of the vocational expert and satisfied himself that the vocational testimony was consistent with the DOT.  [R. 97][4].  There is no conflict apparent from the record.  The ALJ thus discharged his responsibility.

Only Plaintiff's argument on appeal suggests the existence of a conflict between the DOT and the vocational expert testimony.  That alleged conflict is not one that is obvious as might be the case if the vocational expert testified that one limited to occasional lifting of 10 pounds could do a job at the medium level of exertion where frequent lifting and carrying of up to 25 pounds is required.  It takes no particular expertise to conclude that 25 pounds is greater than 10 pounds or to conclude that something that occurs frequently happens more often than something that occurs occasionally.  However, a comparison between the DOT reasoning development level or the language development level and the complexity of a job is not obvious.  That comparison requires vocational expert testimony.  Such expert testimony is not present in this case.  Through argument alone, and without having presented any vocational evidence to support the argument, Plaintiff's counsel has constructed a non-obvious conflict between the DOT and the vocational expert's testimony.

---

[4]     Q [By ALJ] So, has any part of your testimony today been inconsistent or –actually inconsistent or in conflict with the Dictionary of Occupational Titles or the Selected Characteristics of Occupations?

A. [Vocational Expert] No, sir.

[R. 97].

The vocational evidence in the case is contrary to Plaintiff's argument.  Based on the foregoing, the undersigned finds that Plaintiff's reference to the DOT reasoning level in comparison to the RFC does not identify a conflict between the vocational expert's testimony and the DOT and therefore does not present a basis for remand.[5]

## Conclusion

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

---

[5]  The undersigned observes that, even though the DOT states the GED addresses general educational background not specific job tasks, courts have remanded cases for further development and discussion of the reasoning level component of the GED in relation to RFC findings.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  In fact, the question of the role of the DOT reasoning level in assessing the complexity of jobs is an issue that frequently appears in appeals of Social Security disability decisions. However, in nearly 25 years of reviewing Social Security appeals, the undersigned cannot recall a vocational expert ever testifying that a job was or was not suitable for an RFC based on the reasoning level in the DOT. Rather, in the experience of the undersigned, vocational experts routinely and uniformly testify in terms of the DOT SVP rating as an indicator of job complexity.  In addition, typically neither the ALJ nor claimants' attorneys ask vocational experts about the reasoning level for a job.  The fact that vocational experts testify in terms of the SVP rating and not the reasoning level may be significant, but since vocational experts are not questioned on this topic courts, who are not vocational experts, have parsed the language in the DOT related to reasoning level as if they were  interpreting a statute rather than applying a vocational tool.  Cases have been remanded based on reasoning level ratings without any information about whether the reasoning level has any practical significance from a vocational expert's perspective.  *Stanfell v. Colvin*, 2016 WL 1212771 (E.D. Okla.) (finding RFC for simple tasks appeared to conflict with DOT reasoning level 2); *Tabor v. Colvin*, 2015 WL 5724857 (E.D. Okla.)(same); *Ward v. Colvin*, 2015 WL 9438272 (W.D. Okla.) (RFC for simple, routine, repetitive tasks inconsistent with reasoning level 3).

In *Hackett*, decided in 2005, the Tenth Circuit stated that it was unfortunate that the vocational expert was not questioned about the reasoning level by Plaintiff's counsel at the hearing before the ALJ.  The Court noted the ALJ could have responded by explaining or changing the ruling.  395 F.3d at 1176.  Today it is still unfortunate that vocational experts are not questioned about the DOT reasoning level in relation to job complexity.  As the *Hackett* Court noted, Plaintiffs challenging a denial of benefits are not required to preserve issues in the proceedings before the Commissioner.  *Id*.  The undersigned further observes that those representing claimants have a disincentive to question vocational experts about the DOT reasoning level because, although such questioning would promptly clear up any possible ambiguity, it would preclude a potential issue on appeal.  If the question of whether the DOT reasoning level is an appropriate indicator of the complexity of a job is to be resolved, it will be because ALJs take it upon themselves to question vocational experts on the topic.

12

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before August 21, 2019.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 7th day of August, 2019.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE