UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN D., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-CV-330-JED-FHM |
| ANDREW M. SAUL,[1] Commissioner of the Social Security Administration, | ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

This Social Security case comes before the Court on the Report and Recommendation (R&R) (Doc. 17) of United States Magistrate Judge Frank H. McCarthy, who recommends the Court affirm the Commissioner's denial of disability benefits to Plaintiff Steven D.

**I.  BACKGROUND**

Plaintiff Steven D. is a 49-year-old male with a high school education. Prior his alleged disability, he worked primarily as a laborer. He alleges disability as of July 26, 2014 due to a variety of physical and mental conditions, the most important of which relate to a traumatic injury that fractured his femur near the hip and left him with a variety of soft tissue problems. (R. 58, 62, 101). In his initial application, the plaintiff filed a Disability Report alleging disability due to "[a]nxiety, depression, anger problems, blood clots, legs,

---

1.  Effective June 17, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted as the defendant in this action.

diabetes, high blood pressure, [and] cholesterol." (R. 275). However, the Administrative Law Judge (ALJ) refined and expanded the list based on his review of the record and input from the plaintiff and his attorney during the hearing. (*See* R. 21–22, 58–66).

Ultimately, the ALJ found that the plaintiff was not disabled. Although the plaintiff had a variety of severe physical and mental impairments, the ALJ determined that the plaintiff retained the residual functional capacity (RFC) to perform sedentary work, provided that he was not required to stand or walk for longer than 30 minutes at a time. (R. 24). The plaintiff's mental impairments further limited him to unskilled work "consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember and carry out simple instructions." (*Id.*).

The ALJ determined that these limitations precluded performance of any past relevant work, but he found that the plaintiff could find other work. Based on the testimony of a vocational expert, the ALJ found that the duties of a "Document Preparer"[2] were within the plaintiff's residual functional capacity, given his age, education, and prior work experience. (R. 42–43). Because about 57,000 of these jobs existed nationwide, the ALJ found that the plaintiff was not disabled.

After the Commissioner made its final decision, the plaintiff sued in district court. The Commissioner and the plaintiff fully briefed the issues, and Judge McCarthy entered the present R&R. The plaintiff then filed a timely Objection (Doc. 18), prompting the Court's review.

---

2.   *See* Dictionary of Occupational Titles (DOT), # 249.587-018, 1991 WL 672349.

## II.     LEGAL STANDARD

In reviewing a magistrate judge's recommendation, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

## III.     DISCUSSION

The plaintiff makes two broad arguments in objecting to Judge McCarthy's R&R. First, the plaintiff contends that the ALJ committed reversable error by failing to address the plaintiff's alleged obesity. (Doc. 18 at 1–5). Second, the plaintiff argues that the Commissioner failed to carry his burden of proving that the plaintiff was capable of doing the "other work" proposed by the vocational expert (VE) at step five of the sequential analysis. (Doc. 18 at 5–7).

### A.     Obesity

The plaintiff argues that the ALJ's decision should be reversed and remanded because the ALJ failed to address the issue of the plaintiff's alleged obesity. Although the plaintiff did not allege obesity as an impairment in his original application, the ALJ began the plaintiff's hearing by asking him and his attorney for clarification on the impairments that prevented the plaintiff from working. (R. 58). At the tail end of this line of questioning,

3

the plaintiff's attorney added his client's alleged obesity as an impairment. (*See* R. 66). When the ALJ finally issued his decision, however, it made no mention of the defendant's alleged obesity.

Judge McCarthy recommends against remand because the plaintiff did not do enough to explain how the ALJ's omission harmed him. (*See* Doc. 17 at 4–5). The ALJ found that the defendant's RFC precluded all but sedentary work, and the plaintiff did not point to any obesity-related impairments that would further limit his functional capacity. Because the plaintiff did not explain how the ALJ's failure to address obesity prejudiced him in any way, Judge McCarthy reasons, the alleged error was purely technical and remand unwarranted. The Court cannot agree.

The Social Security Administration has promised that, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1P, 2002 WL 34686281, at *7*; see also Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less."). Thus, the ALJ's failure to consider the plaintiff's obesity was clearly in error.

It is tempting to find, as Judge McCarthy did, that this error was harmless. The plaintiff has pointed to no medical evidence that his obesity limited his ability to work or exacerbated any of the conditions that did. Moreover, although the plaintiff's weight frequently placed his body mass index over 30, the threshold for a presumptive diagnosis, he does not appear to have been anything more than mildly obese during the relevant

4

period.[3] Thus, it seems unlikely that the plaintiff's weight would meaningfully alter the ALJ's findings as to the plaintiff's RFC.

Nevertheless, it is not for this Court to supply reasoning where the ALJ has not. A court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007). The Tenth Circuit has held that, "where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). That is not the case here, where the Court has no way of knowing why the ALJ included no obesity-related limitations in the RFC. It could be that the ALJ reviewed the records and simply did not consider the plaintiff to be obese. It could be that the ALJ believed the plaintiff was obese but did not believe that the plaintiff's weight affected his functional capacity. It could be that the ALJ simply forgot to address the issue. Whatever the reason, it is impossible to follow the ALJ's reasoning because he did not discuss obesity at all.

---

3. An individual's body mass index is the ratio of his or her weight in kilograms to the square of his or her height in meters. SSR 02-1p, 2002 WL 34686281, at *2. Clinical Guidelines promolgated by the National Institutes of Health describe a BMI of 30.0 or above as obese, but the guidelines recognize that BMI is not a perfect predictor of obesity and that diagnosis ultimately turns on the degree to which a person's weight comes from excess body fat. *Id.* In the absence of a physician's diagnosis, an ALJ may determine the presence of obesity based on the evidence in the record, including medical records or notes showing consistently high body weight or BMI. *Id.* at *3. In this case, various medical records show that the plaintiff's weight frequently placed his body mass index at or slighlty above 30. (*See, e.g.*, R. 565, 651, 785, 788, 829, 832, 950, 954, 958, 978).

Moreover, where courts have declined to reverse based on an ALJ's failure to adequately address a plaintiff's alleged obesity, obesity was at least mentioned in the ALJ's discussion of the medical evidence and accounted for in the medical opinions underpinning the RFC finding. *See Fagan v. Astrue*, 231 F. App'x 835 (10th Cir. 2007); *Gennaro v. Colvin*, No. 13–cv–03247–MEH, 2015 WL 490830, at *12 (D. Colo. Feb. 2, 2015); *Breath v. Colvin*, No. CIV–14–444–HE, 2015 WL 5569020, at *3 (W.D. Okla. Aug. 26, 2015). Such is not the case here, where the allegation was never addressed in the ALJ's decision or the medical opinions on which he relied. Accordingly, the case must be remanded so that the ALJ can address the plaintiff's alleged obesity.

**B.     Step Five, "Other Work"**

In his Opening Brief, the plaintiff also argued that the ALJ's decision at step five was unsupported by substantial evidence because (1) the ALJ did not consider the plaintiff's alleged obesity in the RFC determination, (*see* Doc. 13 at 10); (2) because the ALJ improperly analyzed the plaintiff's mental impairments, (*see* Doc. 13 at 10–13); and (3) because the ALJ failed to resolve conflicts between the vocational expert and the Dictionary of Occupational Titles (DOT), (*see* Doc. 13 at 13–14).

The first-two arguments are quickly dispatched. The Court has already addressed the ALJ's failure to properly consider the plaintiff's alleged obesity. On remand, the ALJ should make findings as required under SSR 19-2p.[4] As for the ALJ's analysis of the

---

4.     SSR 19-2p, 2019 WL 2374244 supersedes 02-1p but was adopted after the ALJ's decision in this case. On remand, the ALJ should apply the current Social Security Ruling. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14.

plaintiff's mental impairments, the plaintiff argues that the ALJ's RFC determination is undermined by his failure to assign any particular weight to the findings of a treating psychologist who evaluated the plaintiff. However, as Judge McCarthy explains (*see* Doc. 17 at 9), the psychologist's evaluation gave observations and test results but did not express an opinion in terms of the plaintiff's functional limitations, so there was no "opinion" to weigh. Moreover, the ALJ determined that the plaintiff's RFC limited him to "unskilled work consisting of simple and routine tasks with routine supervision that requires only that he be able to understand, remember and carry out simple instructions." (R. 24). This finding is consistent with the results of the psychologist's evaluation. Because the ALJ clearly considered the psychologist's findings in determining the plaintiff's RFC, and because the psychologist offered no opinion contradicting the limitations described by the ALJ, the Court finds no error in the ALJ's analysis of the plaintiff's mental impairments.

The plaintiff's third argument requires some additional analysis. When a VE's testimony conflicts with the DOT, an ALJ "must investigate and elicit a reasonable explanation" as to the discrepancy. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-4p, 2000 WL 1898704, at *4. Here, the VE testified that a person with the plaintiff's RFC could perform the job of Document Preparer as defined by the DOT. The plaintiff argues that, given the limitations in his RFC, this was at odds with the DOT's description of the job. As a result, he claims, the ALJ should have required the VE to explain the discrepancy.

The DOT assesses jobs in terms of the "General Educational Development" (GED) that a person would need in order to achieve satisfactory job performance. Each job is

assigned a score representing the required level "Mathematical Development," "Language Development," and "Reasoning Development." *See* DOT, app. C, 1991 WL 688702 (4th Ed. Rev. 1991). The job of "Document Preparer" requires level 3 reasoning, which the DOT defines as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, # 249.587-018, 1991 WL 672349. By contrast, a job with level 1 reasoning would require only the ability to "[a]pply commonsense understanding to carry out *simple* one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, app. C, 1991 WL 688702 (emphasis added).

The plaintiff contends that level 3 reasoning (and, by extension, the job of Document Preparer) is beyond his RFC, which the ALJ limited to "unskilled work consisting of simple and routine tasks with routine supervision that requires only that he be able to understand, remember and carry out simple instructions." (R. 24). As a result, the plaintiff argues, the VE's testimony that the plaintiff could work as a Document Preparer conflicted with the DOT. The Court is inclined to agree.

In recommending against remand, Judge McCarthy reasons that the VE's testimony does not necessarily conflict with the DOT because the DOT defines GED as a general measure of the education required to perform a job, while the limitations in the plaintiff's RFC reflect his mental impairments. (*See* Doc 17 at 9–10). However, the DOT might describe the GED as a measure of education, but the various "levels" on the reasoning scale

speak of a worker's ability to "carry out instructions" and "deal with problems" of varying levels of complexity—language that tracks closely with the language used to describe residual functional capacity. Moreover, whether reasoning ability is a measure of education or innate capacity is purely academic. If a job requires the ability to "deal with problems involving several concrete variables" but a person is capable of performing only "simple and routine tasks," it makes no difference that his limitations are the result of mental impairments rather than a lack of education.

Finally, and most importantly, the Tenth Circuit has held that a VE's testimony may be inconsistent with the DOT when a job title's reasoning level appears to exceed the plaintiff's RFC. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174–75, 1176 (10th Cir. 2005). In *Hackett*, the RFC limited the plaintiff to "simple and routine work tasks" but a VE testified that the plaintiff could do a job that the DOT described as requiring reasoning level 3. The court ordered remand because, although there was an "apparent conflict" between the plaintiff's RFC and the reasoning level required for the VE identified as appropriate, the ALJ had not addressed the discrepancy. *Hackett*, 395 F.3d at 1176; *see also Linda M. P. v. Saul*, Case No. 17-CV-409-JED-GBC, 2020 WL 2840243, *1–2 (N.D. Okla. Jun. 1, 2020) (unpublished); *Hopkins v. Berryhill*, Case No. 17-CV-155-GKF-FHM, 2018 WL 4945233, *1–2 (N.D. Okla. Jul. 9, 2018) (unpublished). As in *Hackett*, the VE in this case testified that the plaintiff was capable of performing a job requiring reasoning level 3, despite an RFC limiting the plaintiff to "simple and routine tasks." Consequently, *Hackett* is dispositive. Because the VE's testimony regarding the plaintiff's ability to work as a Document Preparer appeared to conflict with the position as defined by the DOT, the

ALJ was required to inquire about the discrepancy. Because he did not do so, the Court must remand.

## IV.   CONCLUSION

For the foregoing reasons, the Court **rejects** those parts of the R&R relating to (1) the ALJ's failure to consider the plaintiff's alleged obesity, (*see* Doc. 17 at 4–5, 6); and (2) the ALJ's failure to address the potential conflict between the Vocational Expert's opinion and the Dictionary of Occupational Titles, (*see* Doc. 17 at 9–12). The R&R is in all other respects **accepted**. This matter is **reversed in part and remanded** to the Commissioner for further proceedings in accordance with this decision. A separate Judgment will be entered forthwith.

SO ORDERED this 2nd day of September, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT